**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

STROMBERG SHEET METAL        :
WORKS, INC.,                          :
                                      :
          Plaintiff,              :
                                        :
          v.                    :
                                        :
WASHINGTON GAS ENERGY       :
SYSTEMS, INC.,                 :    Civil Action No.:    04-1936 (RMU)
                                        :
          Defendant,            :
                                        :    Document No.:     22
WASHINGTON GAS & LIGHT CO.,   :
                                        :
          Defendant and       :
          Third-Party Plaintiff,   :
                                        :
          v.                    :
                                        :
THERMAL ENGINEERING         :
GROUP, INC.,                  :
                                        :
          Third-Party Defendant.  :

<u>**MEMORANDUM OPINION**</u>

**GRANTING THE THIRD-PARTY PLAINTIFF'S MOTION TO COMPEL ARBITRATION**

**I.  INTRODUCTION**

This breach of contract dispute is before the court on Washington Gas and Light

Company's ("WGL") motion to compel arbitration.  WGL, a defendant and the third-party

plaintiff in this case, seeks a court order requiring Thermal Engineering Group ("TEG"), the

third-party defendant, to submit to arbitration with Stromberg Sheet Metal Works, Inc.

("Stromberg"), the plaintiff.  At issue in WGL's motion is whether the arbitration clause in the

contract between WGL and TEG is assignable.  Because the arbitration clause is assignable and

because the contract between defendant WGL and TEG states that all disputes are to be settled by arbitration, the court grants WGL's motion to compel arbitration.

## II.  BACKGROUND

### A.  Factual Background

In 1996, the federal government awarded a contract to design and build a heating and chilling facility ("the project") to WGL.  Compl. ¶ 5.  WGL entered into two subcontracts to complete the project, one with TEG to design the project, and one with defendant Washington Gas Energy Systems ("WGES") to serve as manager and general contractor for the project.  *Id.* ¶ 19; Def. WGES' Counterclaim ¶ 4.  As project manager, WGES subcontracted with Stromberg for construction and manufacturing services.  *Id.*

In February 2003, WGES issued a work order for Stromberg to fabricate and install combustion air intake ducts and turbine exhaust ducts.  Compl. ¶ 9.  Stromberg alleges that WGES still owes $183,370 of the original $743,900 contract price.  *Id.* ¶ 32.  Stromberg also alleges that WGES requested changes to the work order with a total cost of $636,663.  *Id.* According to Stromberg, the changes that WGES requested were necessary to fix TEG's design defect.  *Id.*  In addition, Stromberg estimates that the cost of refabrication due to the design defect was $284,655.  *Id.*  Consequently, Stromberg filed a complaint alleging that WGL and WGES owe it damages for unpaid work and for work that it was required to do as a result of TEG's alleged design defect.  *Id.* ¶¶ 22, 34; *see also* WGES' Consent Mot. to Join WGL as Def. ¶ 2.

In response to Stromberg's suit, WGES filed a counterclaim asserting that TEG's design was not defective and that the additional costs incurred by Stromberg were a result of

Stromberg's own failure to properly fabricate, man, manage, install, and correct its work.  Def.

WGES' Counterclaim ¶ 41.  WGES alleges these failures caused a ten month delay.  *Id.* ¶ 35.

WGES' counterclaim seeks $1,016,255 for total damages due to the failures and subsequent ten-

month delay.  *Id.* ¶ 44.

       Key to the motion before the court, WGES' co-defendant, WGL, filed a third-party

complaint alleging that TEG is liable for the damages resulting from any design defects.  WGL's

Third-Party Compl. ¶ 16; *see also* Mem. of P. & A. in Supp. of Mot. to Stay Proceedings and

Compel Arbitration ("WGL's Mot. to Compel") at 2.  Because the subcontract between WGL

and TEG contains a dispute resolution provision requiring mediation and arbitration instead of

litigation, WGL now seeks to submit its claims against TEG to arbitration.  *Id.*

## B.  Procedural Background

       In September 2005, all parties submitted to a two-day mediation.  WGL's Mot. to Compel

at 2.  Although unable to reach a global settlement, Stromberg, WGL, and WGES agreed to

dismiss, without prejudice, their disputes against each other.  *Id.*  As a part of this dismissal,

WGL assigned its claims against TEG to Stromberg.  *Id.*  WGL requests, "for the use and benefit

of Stromberg," that this matter be stayed and referred to arbitration.[1]  *Id.*  The court now turns to

WGL's motion to compel arbitration.

---

[1]       According to the subcontract between Washington Gas and Light Company ("WGL")
and Thermal Engineering Group ("TEG"), all disputes not resolved by mediation are subject to
arbitration.  Mem. of P. & A. in Supp. of Mot. to Stay Proceedings and Compel Arbitration ("WGL's
Mot. to Compel") at 2.

### III.  ANALYSIS

#### A.  Legal Standard for Motion to Dismiss and Compel Arbitration

The Federal Arbitration Act ("FAA") provides that "a written provision in . . . a contract to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable save upon any grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA creates a strong presumption in favor of enforcing arbitration agreements and "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (stating that arbitration agreements must be rigorously enforced); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (noting that federal policy favors arbitration).  Nevertheless, parties cannot be forced into arbitration unless they have agreed to do so.  *AT&T Techs. Inc. v. Commc'ns Workers*, 475 U.S. 643, 648-49 (1986).  Moreover, the authority of arbitrators to resolve disputes is derived from the agreement of parties to engage in arbitration.  *Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002).  Because arbitration provisions are in essence a matter of contract between the parties, it is for the courts to decide whether the parties are bound by a given arbitration clause.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (holding that "a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide") (internal quotation omitted).

Such questions of arbitrability are typically brought before the court pursuant to section 4 of the FAA, which permits a party to petition any United States district court which would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in

the manner provided for in such agreement." 9 U.S.C. § 4.  When presented with a motion to compel arbitration, a district court must "determine the enforceability of the agreement [to arbitrate] and decide whether arbitration should be compelled." *Nelson v. Insignia/ESG, Inc.*, 215 F. Supp. 2d 143, 146 (D.D.C. 2002).  It is well-settled law that to make such a determination, courts must engage in a two-part inquiry.  *Id.* at 149-50.  First, the court must decide whether the parties entered into a valid and enforceable arbitration agreement.  *Nur v. K.F.C. USA, Inc.*, 142 F. Supp. 2d 48, 50-51 (D.D.C. 2001).  If the court finds that the parties did enter a valid arbitration agreement, the second step is to determine whether the arbitration agreement encompasses the claims raised in the complaint.  *Id.*

If the party opposing arbitration contends that no agreement to arbitrate was entered, this effectively raises the issue of whether there was a meeting of the minds on the agreement to arbitrate, and the standards for resolving a summary judgment motion pursuant to Federal Rule of Civil Procedure 56 should be applied.  *Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004).  Hence, "the proper approach to employ in reviewing the defendant's motion to dismiss and compel arbitration is to apply the same standard of review that governs Rule 56 motions." *Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003).

### B.  The Court Grants the Motion to Compel Arbitration

In this case, TEG does not dispute that it entered into a valid and enforceable arbitration agreement with WGL.  TEG's Opp'n at 4.  TEG does dispute, however, WGL's contention that Stromberg may enforce the arbitration agreement on behalf of WGL.  *Id.* at 5.  Stated differently, TEG argues that WGL's decision to assign its right to arbitration to Stromberg invalidates the arbitration provision.  For the reasons that follow, the court concludes that TEG must submit to

5

arbitration.

## 1. The Contract Language Requires Arbitration

TEG argues that, according to the plain language of the contract, Stromberg may not participate in the arbitration without TEG's consent. TEG's Opp'n at 4. TEG supports its argument by pointing to the language of the arbitration clause, which states that "no arbitration arising out of or relating to this Agreement will include by consolidation, joinder or in any other manner any other person or entity who is not a party to this Agreement unless . . . [TEG consents]." *Id.* WGL, on the other hand, argues that Stromberg's status as a non-party to the agreement between TEG and WGL is irrelevant to the enforceability of the arbitration clause because WGL assigned its rights to Stromberg. WGL's Mot. to Compel at 3-4. TEG, however, contends that the contract language does not allow WGL to assign its right to arbitration.[2] TEG's Opp'n at 4.

Contrary to TEG's argument, the contract between WGL and TEG allows WGL to assign its rights under the contract to Stromberg. In particular, the contract between WGL and TEG states that WGL and TEG agree to "bind themselves, their partners, their successors, assigns, and legal representatives." TEG's Opp'n Ex. 1 at 8. "[T]he written language embodying the terms of an agreement governs the rights and liabilities of the parties." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005). Because the language of the contract between WGL and TEG contemplates that they may assign their rights under the contract, TEG's argument that the contract does not allow WGL to assign its right to arbitrate is without merit.

---

[2] Pursuant to the contract between WGL and TEG, the agreement to arbitrate is enforceable under the law of the District of Columbia. TEG's Opp'n Ex. G. Accordingly, the court analyzes the instant dispute pursuant to District of Columbia law.

While the agreement between TEG and WGL contains language limiting the obligation of parties to the agreement to arbitrate with non-parties to the agreement, it is "well-settled that an assignee of a contract stands in the shoes of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract." *Manganaro Corp. v. Jefferson at Penn Quarter, L.P.*, 2005 WL 3273979, at *3 (D.D.C. Aug. 9, 2005); D.C. CODE § 28-2303; *see also Fox-Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1359 n.69 (D.C. Cir. 1970). As an assignee of WGL, Stromberg has the same rights as WGL has in its contract with TEG. *Woodland Ltd. P'ship v.Wulff*, 868 A.2d 860, 863 (D.C. 2005) (stating that an assignee "has the same rights as the assignor, and, as a result, the assignee can enforce those rights by the same remedies available to the assignor"). The court, accordingly, concludes that the plain language of the contract does not relieve TEG of its obligation to submit to arbitration.[3]

### 2. TEG's Contractual Liability

TEG further argues that neither WGL nor Stromberg may bring a suit against it to collect damages related to the contract project and thus arbitration is unnecessary. TEG's Opp'n at 6 – 7. While the contract states that TEG shall not be liable to WGL for certain damages related to the project, TEG's Opp'n Ex. 1 at 30, the applicability of the clause limiting the scope of WGL's claims and damages against TEG is a question for the arbitrator to decide. *Pan Am. World Airways, Inc. v. C. A. B.*, 683 F.2d 554 (D.C. Cir. 1982) (noting that "[i]n private contract disputes, arbitration is required of any controverted claim that can reasonably be said to fall

---

[3]      TEG also argues that because Stromberg, and not WGL, has alleged that TEG's design was defective, "no dispute yet exists between WGL and TEG." TEG's Opp'n at 5. Presumably, TEG attempts to argue that the matter is not ripe for adjudication. But, as stated *supra*, WGL assigned its claims to Stromberg and Stromberg has a dispute with TEG. Further, WGL has filed a third-party complaint seeking indemnification for any damages that Stromberg may receive in the future. Therefore, WGL and TEG do have a dispute and the matter is ripe.

within the scope of the arbitration clause"); *see also Hobley v. Ky. Fried Chicken, Inc.*, 2005 WL 3838163, at *1 (D.C. Cir. Dec. 22, 2005) (quoting *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 830 (D.C. Cir. 1987) for the proposition that "federal policy favoring arbitration counsels that doubts about the intended scope of an agreement to arbitrate be resolved in favor of the arbitral process").

Moreover, "a court's function in an action to compel arbitration is limited to [determining] whether the party seeking arbitration is making a claim which on its face is covered by the contract." *Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (quoting *Hamilton Life Ins. Co. v. Republic Nat'l Life Ins. Co.*, 408 F.2d 606, 609 (2d. Cir. 1969)). Here, WGL claims that TEG is required to provide indemnification for any damages Stromberg may collect from WGL. The contract between WGL and TEG relates to the project in which TEG's design defect purportedly arose. Thus, WGL's claims are, on their face, covered by the contract requiring arbitration. Because WGL's claims are covered by the contract requiring arbitration and because any decisions limiting the scope of WGL's claims for damages against TEG are appropriately left to the arbitrator, the court grants WGES' motion to compel arbitration.

### IV.  CONCLUSION

For the foregoing reasons, the court grants WGL's motion to compel arbitration.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 23rd day of August, 2006

RICARDO M. URBINA
United States District Judge